ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
BENJAMIN J. WOLINSKY (CABN 305410)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6996
    Facsimile: (415) 436-6748
    benjamin.wolsinky@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NOEM MARGOLIES, individually on behalf of all others similarly situated, | Case No. 24-cv-00340-VC |
| Plaintiffs, | **NON-PARTY UNITED STATES' AMENDED NOTICE OF MOTION AND MOTION TO REMAND** |
| v. | |
| LIFELONG MEDICAL CARE., | Date:     March 28, 2024 |
| | Time:     10:00 a.m. |
| Defendant. | Location:  Courtroom 4, 17th Floor |
| |           450 Golden Gate Avenue |
| |           San Francisco, CA |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I.      INTRODUCTION ...............................................................................................................1

II.     BACKGROUND .................................................................................................................3

        A.     Federally Supported Health Centers ......................................................................3

        B.     LifeLong's Data-Breach Litigation.........................................................................5

III.    LIFELONG CANNOT REMOVE TO FEDERAL COURT AS A FEDERAL
DEFENDANT .....................................................................................................................6

        A.     LifeLong Cannot Remove Under 42 U.S.C. § 233(*l*)(2) Because The United
States Timely Appeared Under § 233(*l*)(1). ..........................................................6

        B.     Removal Under 28 U.S.C. § 1442(a)(1) Fails Because It Is Untimely..............................8

        C.     Removal Under 28 U.S.C. § 1442(a)(1) Fails Because Section 233 Supplants
Section 1442 for Removals. ....................................................................................8

        D.     LifeLong does not satisfy the requirements for a Section 1442 removal. ...........................9

                1.     LifeLong is not acting under an officer of the United States................................10

                2.     There is no causal nexus between the data breach and a federal
officer's "direct orders or comprehensive and detailed regulations."...................11

                3.     LifeLong has no federal defense. .........................................................................12

IV.    LIFELONG CANNOT REMOVE TO FEDERAL COURT UNDER FEDERAL
QUESTION JURISDICTION ...........................................................................................15

V.     CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Agyin v. Razmzan*,
   986 F.3d 168 (2d Cir. 2021).........................................................................................11

*Allen v. Christenberry*,
   327 F.3d 1290 (11th Cir. 2003) ...................................................................................7

*Alsup v. 3-Day Blinds, Inc.*,
   435 F. Supp. 2d 838 (S.D. Ill. 2006).....................................................................11, 12

*ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality,*
   *for Mont.*, 213 F.3d 1108 (9th Cir. 2000) ..................................................................15

*Babbitt v. Dignity Health*,
   No. 18-cv-6528-DMG, 2018 WL 6040472 (C.D. Cal. Nov. 19, 2018)........................7

*Babbitt v. Health*,
   No. 18-56576, 2023 WL 1281668 (9th Cir. Jan. 31, 2023)........................................8

*Carlson v. Green*,
   446 U.S. 14 (1980).....................................................................................................13

Caterpillar Inc. v. Williams,
   482 U.S. 386 (1987)...................................................................................................15

*City & Cnty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022) ...............................................................................9, 10

*Cowan v. LifeLong Med. Care*,
   No. 21-cv-10062-VC, 2022 WL 1025146 (N.D. Cal. Apr. 6, 2022)...........................2

*Doe v. Centerville Clinics Inc.*,
   No. 2:23-cv-1107-NR, 2023 WL 5984337 (W.D. Pa. Sept. 14, 2023).....................7, 9

*Doe v. Torrance Mem'l Med. Ctr.*,
   23-cv-01237, 2023 WL 2916548 (C.D. Cal. Apr. 12, 2023)......................................12

*El Rio Santa Cruz Neigh'd Health Ctr., Inc. v. U.S. Dep't of Health & Human Svcs.*,
   396 F.3d 1265 (D.C. Cir. 2005) ...................................................................................6

*Estate of Booker v. Greater Phila. Health Action, Inc.*,
   10 F. Supp. 3d 656 (E.D. Pa. 2014) .............................................................................8

*Fidelitad, Inc. v. Insitu, Inc.*,
   904 F.3d 1095 (9th Cir. 2018) ....................................................................................12

*Friedenberg v. Lane County*,
   68 F.4th 1113 (9th Cir. 2023) ........................................................................ 11

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) ................................................................................... 13

*Hiscox Ins. Co. Inc. v. Warden Grier, LLP*,
   474 F. Supp. 3d 1004 (W.D. Mo. 2020) ......................................................... 14

*K.C. v. Cal. Hosp. Med. Ctr.*,
   No. 18-cv-6619, 2018 WL 5906057 (C.D. Cal. Nov. 8, 2018) ..................... 1, 9

*Krandle v. Refuah Health Ctr., Inc.*,
   22-cv-4977, 2023 WL 2662811 (S.D.N.Y. Mar. 28, 2023) ............................ 11

*Marshall v. Lamoille Health Partners*,
   2:22-cv-166, 2023 WL 2931823 (D. Vt. Apr. 13, 2023) ............................ 13, 14

*Nappier v. Snyder*,
   1:16-cv-636, 2017 WL 1190549 (W.D. Mich. Mar. 31, 2017) ....................... 11

*N.G. v. Downey Reg'l Med. Ctr.*,
   140 F. Supp. 3d 1036 (C.D. Cal. 2015) ......................................................... 11

*Nye v. Hilo Med. Ctr.*,
   No. 09-cv-220, 2010 WL 931926 (D. Haw. Mar. 11, 2010) ........................... 9

*Osorio v. Cha Hollywood Med. Ctr.*,
   No. 2:23-cv-8658-SPG-KS, 2024 WL 289320 (C.D. Cal. Jan. 23, 2024)........ 7, 8, 9

*Quinto v. Regents of Univ. of California*,
   3:22-cv-04429-JD, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023) ..................... 10

*Romulus v. CVS Pharmacy, Inc.*,
   770 F.3d 67 (1st Cir. 2014)......................................................................... 8, 15

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   720 F.3d 1121 (9th Cir. 2013) ......................................................................... 8

Saldana v. Glenhaven Healthcare LLC,
   27 F.4th 679 (9th Cir. 2022) ......................................................................... 12

*Sherman v. Dignity Health*,
   No. 19-cv-1584, 2019 WL 2242071 (C.D. Cal. May 23, 2019)................... 10, 12

*Sherman v. Sinha*,
   843 F. App'x 870 (9th Cir. 2021) .................................................................... 7

*United States v. Orleans,*
    425 U.S. 807 (1976)................................................................................. 10, 12

*W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.,*
    23 F.4th 288 (4th Cir. 2022) .................................................................... 11

*Watson v. Philip Morris Companies, Inc.,*
    551 U.S. 142 (2007)................................................................................. 9, 11

**Statutes**

28 U.S.C. § 517....................................................................................................... 1

28 U.S.C. § 1331................................................................................................. 1, 3

28 U.S.C. § 1442(a)(1)..................................................................................... 1, 8, 9

28 U.S.C. § 1446(b)(1) ......................................................................................... 8

28 U.S.C. § 2679.................................................................................................... 4

31 U.S.C. § 6301.................................................................................................... 3

31 U.S.C. § 6303.................................................................................................... 3

31 U.S.C. § 6304............................................................................................... 3, 10

31 U.S.C. § 6305.................................................................................................... 3

42 U.S.C. § 233.............................................................................................. passim

42 U.S.C. § 251(b) ............................................................................................... 13

42 U.S.C. § 254b............................................................................................... 3, 10

**Regulations**

28 C.F.R. § 15.4(b) ............................................................................................... 5

45 C.F.R. § 75.2.................................................................................................... 3

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on March 28, 2024, at 10:00am, or as soon thereafter as the matter may be heard, in Courtroom 4, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Vince Chhabria, non-party the United States of America, will and hereby does move for an order remanding this case to the Superior Court of the State of California, County of Alameda, because Defendant LifeLong Medical Care ("LifeLong") lacks a basis to remove as a "federal defendant," as it purports. The United States moves pursuant to 28 U.S.C. § 517, which authorizes the Attorney General to send an officer to "attend to the interests of the United States in a suit pending in a court of the United States." *See K.C. v. Cal. Hosp. Med. Ctr.*, No. 18-cv-6619, 2018 WL 5906057, at *1, *5 (C.D. Cal. Nov. 8, 2018) (granting United States' motion to remand filed per 28 U.S.C. § 517). The motion is based on this notice, the memorandum of points and authorities, all matters of record filed with the Court, and such other evidence or argument as the Court may consider.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

LifeLong purports to remove this action as a federal defendant, but lacks a basis to do so under any of the statutory provisions – 42 U.S.C. § 233(*l*)(2); 28 U.S.C. § 1442(a)(1); and 28 U.S.C. § 1331 – cited in its Notice of Removal (Dkt. No. 1). LifeLong is a private, nonprofit entity run by a fourteen-member board of directors and a nine-member leadership team.[2] It is a non-federal entity that receives grant funding from the Health Resources and Services Administration ("HRSA"), an agency of the Department of Health and Human Services ("HHS"). In fiscal year 2021, when the underlying acts and

---

[1] This jurisdiction is also considering other consolidated cases purportedly removed under § 233(*l*)(2) by other community health centers facing data breach cases. In one set of cases, this Court has denied remand without prejudice to refiling once the Ninth Circuit decides *Blumberger v. Tilley*, No. 22-56032 (9th Cir.). *See Gerson v. Petaluma Health Ctr.*, No. 3:23-cv-3870, Dkt. 41 (N.D. Cal. Nov. 30, 2023). In the other case, *Robertson v. La Clinica de la Raza, Inc.*, Case No. 23-cv-05817-HSG (N.D. Cal.), the parties have postponed resolution of remand and are evaluating settlement options. *See id.* at Dkt. No. 37.

[2] *See* "Board of Directors," https://LifeLongmedical.org/board-of-directors/; "Executive Leadership," https://LifeLongmedical.org/executive-leadership (accessed February 15, 2024).

omissions occurred, LifeLong served approximately 52,209 patients with expenses of $78,447,365.[3]

On November 24, 2020, Netgain Technology, LLC ("Netgain"), a third-party vendor that provides IT services to LifeLong[4], discovered anomalous network activity, which was later determined to be a ransomware attack. This data breach prompted the filing of several lawsuits against LifeLong in Alameda County Superior Court, alleging claims under state law.

On September 17, 2021, Noem Margolies ("Margolies") filed a purported class action complaint in the Superior Court of the State of California for the County of Alameda. LifeLong subsequently filed a cross-complaint against Netgain, and, on December 29, 2021, LifeLong removed the pending state court matters to federal court pursuant to the Class Action Fairness Act ("CAFA"). The *Margolies* matter was related to another matter, *Herman Cowan, et al. v. LifeLong Medical Care*, 3:21-cv-10062. On April 6, 2022, this Court granted Cowan's motion to remand, finding that diversity jurisdiction under the CAFA could not be based upon a defendant's cross-complaint.[5] The Court likewise remanded the *Margolies* matter on April 13, 2022.[6] In state court, the *Cowan* and *Margolies* cases were consolidated. On December 23, 2022, the parties filed a First Amended Consolidated Class Action Complaint, *In re LifeLong Medical Care Data Breach Litigation*, Lead Case No. RG21113030.

On March 27, 2023, the United States Attorney appeared in the state court action to advise that, pursuant to 42 U.S.C. § 233(*l*)(1), HHS had not yet provided its report as to whether the deemed status of LifeLong under 42 U.S.C. §§ 233(g) and (h) extended to the acts and omissions that are the subject of this case. Notice of Removal, Ex. 5 (Dkt. No. 1-6) ¶¶ 3, 4. On December 21, 2023, the United States filed notice of its final determination in the superior court. Notice of Removal, Ex. 6 (Dkt. No. 1-7). On January 19, 2024, LifeLong removed the case to this Court claiming three grounds of removal. *See*

---

[3] *See* "2020 Annual Report," https://LifeLongmedical.org/annual-reports/#2020report (accessed February 15, 2024).

[4] Notice of Removal, Footnote 2.

[5] *Cowan v. LifeLong Med. Care*, No. 21-cv-10062-VC, 2022 WL 1025146, at *1 (N.D. Cal. Apr. 6, 2022).

[6] *See Margolies v. Lifelong Medical Care*, 3:21-cv-10059 (N.D. Cal.), ECF 24, ordering that the matter was remanded for the reasons stated in the *Cowan* decision.

Notice of Removal, page 1.

Each ground is meritless.  First, LifeLong cannot remove under 42 U.S.C. § 233(*l*)(2) because the Attorney General timely appeared in the state court action.  Second, LifeLong's 28 U.S.C. § 1442 removal was untimely.  Moreover, LifeLong has failed to show that it meets all the requirements for a § 1442 removal.  Finally, the Complaint does not present a question of federal law to support LifeLong's removal under 28 U.S.C. § 1331.  This action should be remanded to state court.

## II.    BACKGROUND

### A.    Federally Supported Health Centers

The federal government provides grants to public and private nonprofit entities to defray "the costs of the operation of public and nonprofit private health centers that provide health services to medically underserved populations."  42 U.S.C. § 254b(1)(A).[7]  Before 1992, health centers used their own funds to purchase medical malpractice insurance.  H.R. Rep. 102-823, at 5 (1992).  To help ease this burden, Congress passed the Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268 (1992) ("FSHCAA").  This act was grafted onto an earlier statute enacted in 1970 immunizing United States Public Health Service ("PHS") employees from medical malpractice.[8]  Subject to statutory conditions and limitations, the FSHCAA made the Federal Tort

---

[7] On the spectrum of financial transfers from the United States to qualifying entities, grants feature the least ongoing involvement by the United States.  Under the Federal Grant and Cooperative Agreement Act ("FCGA") of 1978, 31 U.S.C. § 6301 *et seq.*, and HHS regulations applicable to grant funding awards, a grant is "a legal instrument of financial assistance" used by a federal agency for giving funds to an entity so that it may "carry out a public purpose of support or stimulation authorized" by federal statute "instead of acquiring . . . services for the direct benefit or use of the United States Government" and "substantial involvement is not expected" between the agency and entity "in carrying out the activity contemplated in the agreement."  31 U.S.C. § 6304; *see also* 45 C.F.R. § 75.2 (defining "grant agreement").  The next type of financial instrument is a cooperative agreement, in which "substantial involvement is expected between the executive agency and the . . . recipient when carrying out the activity contemplated in the agreement."  31 U.S.C. § 6305.  Finally, there is the procurement contract, which has a "principal purpose" of acquiring property or services "for the direct benefit or use of the United States Government."  31 U.S.C. § 6303.

[8] In 1970, PHS employees needed this statutory immunity for medical malpractice claims because (1) federal common-law official immunity was not available for medical malpractice claims, and (2) the Westfall Act, which was enacted in 1988, did not yet exist to immunize federal employees for most tort claims arising out of the scope of their employment.  Today, actual PHS employees are

Claims Act's ("FTCA") remedy against the United States exclusive for certain medical malpractice suits. H.R. Rep. 102-823, at 4–6 (1992). Following a three-year demonstration period, Congress amended the FSHCAA to clarify the scope of malpractice protections afforded under the statute and to make the FSHCAA's malpractice protections optional for qualifying grantees. *See* Pub. Law No. 104-73, §§ 2-11, *codified as amended at* 42 U.S.C. § 233(g)-(n).

The FSHCAA, by "deeming" certain entities and individuals to be PHS employees only for purposes of 42 U.S.C. § 233, incorporates only the protections under 42 U.S.C. § 233(a)-(c), not those under the Westfall Act, 28 U.S.C. § 2679(b)-(d). Consistent with the limits of FTCA coverage afforded under the FSHCAA, HHS has stated that community health centers still need to seek insurance for all other contingencies.

Should a health center decide to seek eligibility for medical malpractice protections under FSHCAA, it must apply to the Secretary of Health and Human Services ("HHS"), meet certain requirements, and obtain annual approval from the Secretary. 42 U.S.C. §§ 233(g)(1)(A)-(D), (h). If the health center is approved, the Secretary "deems" the health center and its providers to be employees of the PHS for the upcoming calendar year, but only "with respect to services provided" to its patients and certain non-patients, and only "[f]or purposes of" 42 U.S.C. § 233. *Id.* § 233(g)(1)(A), (B). Once approved, the deeming determination is conclusive as to "services which are the subject of such a

---

immunized for not only conduct characterized as medical malpractice under 42 U.S.C. § 233 (including constitutional torts) but also other potential torts arising out of the scope of their employment under 28 U.S.C. § 2679(b)(1). The FSHCA incorporates only the immunity afforded under 42 U.S.C. § 233(a), not the broader immunity conferred under 28 U.S.C. § 2679(b)(1).

Consistent with the limits of FTCA coverage afforded under the FSHCAA, HHS has stated that community health centers still need to seek insurance for all other contingencies. *See* Federal Tort Claims Act Health Center Policy Manual (July 21, 2014 ed.), H.4 ("FTCA provides protection only for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, which constitute medical malpractice for purposes of this Manual. Consequently, even with FTCA coverage, covered entities will continue to need other types of insurance, such as non-medical/dental professional liability coverage, general liability coverage, director's and officer's liability coverage, automobile and collision coverage, fire coverage, and theft coverage."), *available at* https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policy-manual.pdf. Lifelong heeded that advice and sought the cyber policy that is believed to be providing its defense here.

determination."  42 U.S.C. § 233(g)(1)(F).

If, as here, a civil action is filed in a state court, the Secretary must determine whether the health center "is deemed to be an employee of the Public Health Service for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding."  42 U.S.C. § 233(*l*)(1). Once the Secretary concludes its deeming inquiry, the Attorney General decides whether FTCA coverage extends to any specific lawsuit.  *See* 42 U.S.C. § 233(b)-(c); 28 C.F.R. § 15.4(b) (delegations of the Attorney General's authority).  In cases where deeming applies, 42 U.S.C. § 233(a) provides that the exclusive remedy for medical-malpractice suits against these deemed PHS employees is an action against the United States under the FTCA.  *See* 42 U.S.C. § 233(g)(1)(A).

The FSHCAA provides two ways to remove a case to federal court.  First, the Attorney General may remove the case at any time before trial.  *Id.* § 233(c).  Second, the defendants may remove the case if the Attorney General fails to appear in state court pursuant to 42 U.S.C. § 233(*l*)(1) within 15 days after being notified of the case.  *Id.* § 233(*l*)(2).

**B.    LifeLong's Data-Breach Litigation**

In November 2020, Netgain was the victim of a ransomware attack.  Notice of Removal, Ex. A (Dkt. No. 1-2) (Compl. ¶¶ 51-52).  On February 25, 2021, Netgain's investigation determined that certain files were accessed and/or acquired.  *Id.* (Compl. ¶ 52).  After completing its own investigation, LifeLong notified its patients about the incident on August 24, 2021.  *See id.* (Compl. ¶ 51-53).  On September 17, 2021, Margolies filed a putative class action against LifeLong in Alameda County Superior Court alleging various state law claims arising from the data breach.  On December 23, 2022, the parties filed a First Amended Consolidated Class Action Complaint, *In re LifeLong Medical Care Data Breach Litigation*, Lead Case No. RG21113030.  LifeLong subsequently submitted the amended complaint to HHS on March 10, 2023.  *See* Notice of Removal ¶ 3.

On March 27, 2023, the United States Attorney appeared in the state court action to advise that, pursuant to 42 U.S.C. § 233(*l*)(1), "HHS has not yet provided its report as to whether the deemed status of LifeLong under 42 U.S.C. §§ 233(g) and (h) extends to the acts and omissions that are the subject of

this civil action" and that "[o]nce HHS has completed its review and provided its report, the United States Attorney, as the U.S. Attorney General's delegate, will determine whether the acts alleged fall within the scope of 42 U.S.C. § 233(a), the applicable provisions of the [Federally Supported Health Centers Assistance Act] and were otherwise within the scope of LifeLong's 'deemed employment.'" Notice of Removal, Ex. 5 (Dkt. No. 1-6) ¶¶ 3, 4.  On December 21, 2023, the United States notified the court that LifeLong's request under the cited provisions had been considered and denied.  Notice of Removal, Ex. 6 (Dkt. No. 1-7).  LifeLong nevertheless removed this action to this Court on January 19, 2024, captioning its Notice of Removal as that of a "Federal Defendant."[9]  Notice of Removal.

## III.    LIFELONG CANNOT REMOVE TO FEDERAL COURT AS A FEDERAL DEFENDANT.

### A.    LifeLong Cannot Remove Under 42 U.S.C. § 233(*l*)(2) Because The United States Timely Appeared Under § 233(*l*)(1).

LifeLong's first ground of removal jurisdiction is 42 U.S.C. § 233(*l*)(2), which states that an entity may petition for removal "[i]f the Attorney General fails to appear in State court within the time period prescribed under paragraph (1)[.]"  The time period for the Attorney General's appearance is "15 days after being notified of such filing."  *Id.* § 233(*l*)(1).  Subsection (2) does not prescribe the type of appearance that the Attorney General must make.  The purpose of § 233(*l*)(2) is to "protect a covered defendant against a default judgment due to the Attorney General's untimeliness."  *El Rio Santa Cruz Neigh'd Health Ctr., Inc. v. U.S. Dep't of Health & Human Svcs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005).

Here, it is undisputed that the Attorney General's designee, the United States Attorney, made an appearance in state court within the 15-day period, precluding LifeLong's removal under § 233(*l*)(2). LifeLong admits that it delivered the summons and complaint to HHS and the United States Attorney's Office on March 10, 2023.  Notice of Removal ¶ 3.  LifeLong also concedes that the United States Attorney timely filed a 42 U.S.C. § 233(*l*)(1) notice in state court on March 27, 2023 (the first business day following the weekend deadline), copies of which were served upon counsel.  Notice of Removal,

---

[9] LifeLong also removed another action, *Darryl A. Scott, Jr. v. LifeLong Medical Care*, Case No. 3:24-cv-00341-JSW, to this Court on January 19, 2024, which the United States has also moved to remand.

Ex. 5 (Dkt. No. 1-6).  Thus, the statutory predicate for removal under § 233(*l*)(2) does not exist.

Ignoring that the United States' timely appearance precludes removal under 233(*l*)(2), LifeLong relies upon *Sherman by & through Sherman v. Sinha*, 843 F. App'x 870, 872 (9th Cir. 2021) for the proposition that when the Attorney General timely files an appearance pursuant to § 233(*l*)(1), but "fails to issue a determination within 15 days after being notified of the civil action […] the district court's jurisdiction is properly invoked only after the Attorney General has had an opportunity to determine whether the defendant is deemed a federal officer."  Notice of Removal ¶ 23.  But *Sherman* is inapposite.  The issue before the court in *Sherman* was that the defendant attempted to remove pursuant to § 233(*l*)(2) before the fifteen-day period provided under § 233(*l*)(1) had run.[10]  Nothing in *Sherman* stands for the proposition that a deemed entity's ability to petition the court for removal under § 233(*l*)(2) ripens upon a final coverage determination being made by the Attorney General.  *See V.G. by and through Osorio v. Cha Hollywood Med. Ctr.*, No. 2:23-cv-8658-SPG-KS, 2024 WL 289320, at *3 (C.D. Cal. Jan. 23, 2024) ("Defendant cannot remove under section 233 to challenge the negative coverage decision.").

Thus, given the Attorney General's timely appearance within 15 days of being notified of the complaint, the statutory predicate for removal under § 233(l)(2) does not exist.  *Allen v. Christenberry*, 327 F.3d 1290, 1295 (11th Cir. 2003); *see also Sherman*, 843 F. App'x at 873; *Doe v. Centerville Clinics Inc.*, No. 2:23-cv-1107-NR, 2023 WL 5984337, at *2–3 (W.D. Pa. Sept. 14, 2023) ("[J]ust because Centerville has a prior determination from HHS, that doesn't mean HHS has deemed it an employee of PHS for purposes of this action.  Once the Attorney General had made a timely appearance, Centerville needed to wait for the appropriate authorities to make the relevant determinations as stated in § 233, rather than take matters into its own hands.").

Furthermore, LifeLong waited ten months to remove this case, during which time it committed to state court jurisdiction, and should not be now rewarded with federal court jurisdiction.  *See Babbitt v. Dignity Health*, No. 18-cv-6528-DMG, 2018 WL 6040472, at *4 (C.D. Cal. Nov. 19, 2018) ("Even

---

[10] *Sherman v. Sinha*, 843 F. App'x 870, 872 (9th Cir. 2021).

courts holding that Section 1446(b)'s 30-day limit does not apply to removals under Section 233(*l*)(2) have acknowledged the possibility that laches may bar such removals. *See Estate of Booker v. Greater Phila. Health Action, Inc.*, 10 F. Supp. 3d 656, 665–66 (E.D. Pa. 2014).")", *aff'd by Babbitt v. Health*, No. 18-56576, 2023 WL 1281668 (9th Cir. Jan. 31, 2023).

### B.    Removal Under 28 U.S.C. § 1442(a)(1) Fails Because It Is Untimely.

LifeLong also relies on 28 U.S.C. § 1442(a)(1) as a basis to remove. *See* Notice of Removal ¶¶ 26-42. As a threshold matter, however, removal under § 1442 is not timely. A defendant has thirty days after receiving the summons and/or initial pleading to remove a case under § 1442. *See* 28 U.S.C. § 1446(b)(1). Here, Margolies filed the Complaint against LifeLong years ago, and LifeLong chose to remain in state court until last month.

LifeLong now purports to have grounds to remove this case under § 1442 and tries to escape its untimely removal by averring that the filing of the December 21, 2023 notice by the Attorney General amounted to an "other paper from which it may first be ascertained that the case is one which is or has become removable." *See* Notice of Removal ¶ 44-45, *citing Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 69 (1st Cir. 2014). In advancing this argument, however, LifeLong ignores the text it cites: "when removability is not clear from the initial pleading, Section 1446(b)(3) then looks to the *plaintiffs'* subsequent papers." *See* Notice of Removal ¶ 44. The Attorney General's notice did not impact the allegations against LifeLong and did not otherwise provide a basis for federal officer removal. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("A defendant should not be able to . . . seek removal only when it becomes strategically advantageous for it to do so.") Nothing in the cases cited by LifeLong are to the contrary, and its removal under § 1442 is therefore untimely. *See V.G. by and through Osorio v. Cha Hollywood Med. Ctr.*, No. 2:23-cv-8658-SPG-KS, 2024 WL 289320, at *3 (C.D. Cal. Jan. 23, 2024) (remanding for untimely section 1442 removal).

### C.    Removal Under 28 U.S.C. § 1442(a)(1) Fails Because Section 233 Supplants Section 1442 for Removals.

Fundamentally, LifeLong's attempt to invoke the general federal officer removal statute (28 U.S.C. § 1442) runs counter to how Congress crafted the specific removal provisions in FSHCAA for

these health centers.  If Congress believed health centers had the right to remove under § 1442, then they always could have removed within 30 days of service, divesting state courts of jurisdiction and preventing the very default judgments for which Congress enacted § 233(*l*)(2).

LifeLong's use of § 1442 also runs counter to the FSHCAA structure.  If the claimed "deemed" status of a health center allows it to remove under § 1442(a)(1), then the specific removal provisions in § 233 would be "render[ed] superfluous."  *K.C.*, 2018 WL 5906057, at *5 ("Application of § 1442, instead of § 233, in a case where a defendant is a deemed PHS employee would swallow the § 233 removal provision, rendering it superfluous."); *V.G. by & through Osorio v. Cha Hollywood Med. Ctr.*, No. 2:23-cv-8658-SPG-KS, 2024 WL 289320, at *3 (C.D. Cal. Jan. 23, 2024); *see also Nye v. Hilo Med. Ctr.*, No. 09-cv-220, 2010 WL 931926, at *3 (D. Haw. Mar. 11, 2010) ("Given that § 233 specifically applied to this action, removal under the more general § 1442 was improper.").  Indeed, LifeLong raises 42 U.S.C. § 233 as a colorable federal defense to support its 28 U.S.C. § 1442 removal, but "[t]o permit [LifeLong] to raise § 233 as a defense for purposes of § 1442, when it didn't abide by the removal procedures of § 233, would sidestep the framework of § 233."  *Doe v. Centerville Clinics Inc.*, No. 2:23-cv-1107-NR, 2023 WL 5984337, at *3 (W.D. Pa. Sept. 14, 2023), *on appeal*, No. 23-2738 (3d Cir.).

Furthermore, section 1442's "'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue" from the State.  *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (citation omitted).  The federal government needs no such protection in this case, and LifeLong cannot carry its burden to prove it is acting as a federal officer or acting under a federal officer in its data security practices.

### D.    Lifelong Does Not Satisfy the Requirements for a Section 1442 Removal.

LifeLong has failed to show that it was a federal officer or acting under one; that there is a causal nexus between Plaintiff's allegations and a federal officer's direction; and that it has a colorable federal defense.  28 U.S.C. § 1442(a)(1); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023).  Thus, this case must be remanded.

1.       **LifeLong is not acting under an officer of the United States.**

The Ninth Circuit uses four factors when analyzing whether a defendant "acts under" a federal officer: "(1) working under an officer in a manner akin to an agency relationship; (2) being subject to the officer's close direction, such as acting under the guidance, or control of the officer or having an unusually close relationship involving detailed regulation, monitoring, or supervision; (3) helping fulfill basic governmental tasks; and (4) conducting activities so closely related to the government's implementation of its federal duties that the person faces a significant risk of state-court prejudice."  *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023) (cleaned up) (citations omitted).  LifeLong cannot satisfy its burden to show that it meets any of these factors because the federal government assists LifeLong—not vice versa.

Under the federal Health Center Program, the government provides, at its discretion, grants to entities *already* delivering services to medically underserved populations in order to partially subsidize and defray the entities' operating costs.  *See* 42 U.S.C. § 254b; Elayne J. Heisler, Cong. Rsch. Serv., R43937, Federal Health Centers: An Overview, at 2 (2017).  Nothing in 42 U.S.C. § 254b or 31 U.S.C. § 6304 states that grant funding recipients act under the direction of the Secretary of HHS, act for the benefit of the United States, or accomplish activities that HHS is required to provide.  *Quinto v. Regents of U. of California*, 3:22-cv-04429-JD, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023) (rejecting removal when "receiving incentive payments for acting in a way that promotes a broad federal interest . . . is not the same as being contracted to carry out, or assist with, a basic governmental duty").

The government thus does not conscript private entities to "operate federal grant projects on [its] behalf."  Nor does the government compel such entities to provide specific services to certain populations.  42 U.S.C. § 254b(a)(1); *see United States v. Orleans*, 425 U.S. 807, 816 n.6 (1976) (noting that "the regulations do not convert the acts of entrepreneurs or of state governmental bodies into federal governmental acts"); *Sherman v. Dignity Health*, No. 19-cv-1584, 2019 WL 2242071, at *2 (C.D. Cal. May 23, 2019) ("A [defendant's] status as an employee of a federal grant recipient is insufficient to establish federal officer or agency jurisdiction.").  That is why it is called the "Federally *Supported*

Health Centers *Assistance* Act." Pub. L. No. 102-501, 106 Stat. 3268 (1992) (emphasis added). *See Nappier v. Snyder*, 1:16-cv-636, 2017 WL 1190549, at *6 (W.D. Mich. Mar. 31, 2017) ("[T]his is not a case of the [entity] assisting the [federal agency] to perform its duties, but of [the federal agency] personnel assisting the [entity] in performing its duties"), *aff'd*, 728 F. App'x 571 (6th Cir. 2018).

Health centers do not provide critical services *to or on behalf of the federal government* nor do they perform uniquely governmental functions that the government otherwise would be expected or *required* to perform itself. *Watson*, 551 U.S. at 153–54. The Ninth Circuit's decision in *Friedenberg v. Lane County*, 68 F.4th 1113, 1124 (9th Cir. 2023), did not address whether a health center's removal was *proper* under 28 U.S.C. § 1442; it held only that § 1442 was adequately pled as an alternative basis for removal for purposes of appellate review. Insofar as some courts have held otherwise, those decisions are not binding on this Court and their misunderstanding of the federal government's role is unpersuasive.[11] Here, LifeLong "cannot claim the government is relying on [it] to step into the government's shoes to perform a task the government normally reserves for itself." *N.G. v. Downey Reg'l Med. Ctr.*, 140 F. Supp. 3d 1036, 1040 (C.D. Cal. 2015).

### 2. There is no causal nexus between the data breach and a federal officer's "direct orders or comprehensive and detailed regulations."

LifeLong's Notice of Removal does not establish the causal nexus between the plaintiff's data-breach claims and LifeLong's actions taken pursuant to a federal officer's directions. To "act under" a federal officer requires "a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." *N.G.*, 140 F. Supp. 3d at 1040–41 (italics omitted). *See also Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 848 (S.D. Ill. 2006) (removing party must demonstrate "that the [federal] government compelled it to take an action

---

[11] *See W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 304 (4th Cir. 2022) (failing to recognize that health centers do not have contracts with the federal government—they merely receive grant funding); *Agyin v. Razmzan*, 986 F.3d 168, 176 (2d Cir. 2021) (failing to recognize that health centers existed long before FSHCAA, and nothing requires the government to provide outpatient primary care services); *Krandle v. Refuah Health Ctr., Inc.*, 22-cv-4977, 2023 WL 2662811, at *11 (S.D.N.Y. Mar. 28, 2023) (applying *Agyin*).

for which the defendant is sought to be held liable in state court").  Simply put, LifeLong has not satisfied its burden of showing "[t]he government made me do it."  *See Alsup*, 435 F. Supp. 2d at 848.

No federal officer issued a "direct order" to LifeLong that resulted in the data breach.  *See Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018).  *See Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685 (9th Cir. 2022) ("Without more than government regulations and recommendations, Glenhaven has failed to establish that it was 'acting under' a federal official, and it has not identified a duty of the federal government that it performed."), *cert. denied*, 143 S. Ct. 444 (2022).  Instead, LifeLong is governed by a board of directors and a leadership team that "establish[] the general policies of the center."  42 U.S.C. § 254b(k)(3)(H)(ii).  Health centers therefore have discretion with respect to selecting and implementing such systems, and it is the health center—not the federal government—that "determines the type of patient health record system that it will use."[12]

Section 1442 does not apply to a grantor-grantee relationship, like here, in which the grantee has wide discretion.  *Orleans*, 425 U.S. at 816, n.6; *Sherman*, 2019 WL 2242071, at *2; *Doe v. Torrance Mem'l Med. Ctr.*, 23-cv-01237, 2023 WL 2916548, at *3 (C.D. Cal. Apr. 12, 2023) (rejecting § 1442(a)(1) removal when "[t]he directions [defendant] points to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure").  LifeLong did not act under direct order of the federal government when it allegedly failed to protect Plaintiff's personal data.

### 3.    LifeLong has no federal defense.

LifeLong's contention that it has a "colorable federal defense" against the data-breach claims under 42 U.S.C. § 233(a) (Notice of Removal ¶ 12) is contrary to the text of § 233(a), the history and purpose of § 233 and FSHCAA, and the doctrine of sovereign-immunity.

First, data-breach claims do not fit the text of § 233(a), which is limited to personal injury claims "resulting from the performance of medical, surgical, dental, or related functions."  42 U.S.C. § 233(a).

---

[12] *Id.*, "Chapter 10: Quality Improvement/Assurance," *available at:* https://bphc.hrsa.gov/compliance/compliance-manual/chapter10.

Rather, the conduct at issue here is the work of network administrators, information-technology specialists, and corporate-compliance officers.  *See* Notice of Removal, Ex. 1 (Comp. ¶ 1) (alleging that LifeLong failed "to implement and maintain reasonable security practices").  A data breach does not arise out of the type of medical functions—*i.e.*, direct medical care—that § 233(a) covers, so LifeLong's claim of a "colorable" federal defense should be rejected.  *See Marshall v. Lamoille Health Partners, Inc.*, 2:22-cv-166, 2023 WL 2931823, at *5 (D. Vt. Apr. 13, 2023) (denying 42 U.S.C. § 233(a) immunity to community health center facing data breach class action because "the technology-specific allegations in this case do not include 'medical, dental, surgical, or related functions' as required for immunity under the FSHCAA").

Second, the history and purpose of § 233 and FSHCAA shows that § 233(a) does not cover data-breach claims.  *See Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (noting that statutory interpretation "determines meaning by looking . . . to text in context, along with purpose and history"). The statute reflects the functions that PHS was authorized to provide at the time Section 233(a) was enacted, *e.g.,* the provision of "medical, surgical, and dental treatment and hospitalization and optometric care . . . at remote medical facilities," 42 U.S.C. § 251(b); the provision of "hospital and medical and dental care, including outpatient services, services of mobile clinics and public health nurses, and preventive care including immunizations and health examinations of special groups, such as school children" under the Indian health and medical service program, 21 Fed. Reg. 9805, 9833, 9834 (Dec. 12, 1956).  In making the statute applicable to "related functions," Congress encompassed responsibilities of a similar type of those listed.  The descriptive phrase ("arising from medical, surgical, dental, or related functions") prevents the scope of coverage from turning on any particular state's definition of medical malpractice.  The Supreme Court has even acknowledged that § 233(a) was for "malpractice by certain Government health personnel."  *See Carlson v. Green*, 446 U.S. 14, 20 (1980).

When FSHCAA extended § 233(a) to health centers in 1992 and amended it in 1995, Congress understood that this provision was directed to conduct sounding in medical malpractice.[13]  *See* Pub. L.

---

[13] *See* H.R. Rep. 102-823, at 6 (1992) ("Under the Committee bill, public or private nonprofit

No. 104-73, 109 Stat. 777 (1995) ("An Act to amend the Public Health Service Act to extend and clarify malpractice coverage for health centers, and for other purposes."). And FSHCAA grafted numerous provisions onto § 233 expressly referencing "malpractice." *See* 42 U.S.C. §§ 233(g)(1)(G)(ii), (g)(2), (h)(1), (m)(2), (n)(1)(A), (n)(1)(D)(i)-(ii), (n)(1)(D)(2)(A)(i), (n)(2)(C), (n)(2)(C)(ii), (n)(2)(D). Congress, furthermore, commissioned reports on the "government's risk exposure" under the statute, and each report focused on medical malpractice liability. *See* H.R. Rep. 102-823, at 7 (1992) (requiring a "report on the medical malpractice liability claims experience of covered entitles"); H.R. Rep. 104-398, at 7–8 (1995).[14]

Finally, LifeLong relies on a number of non-binding decisions, none of which involves cyberattacks or data breaches, that fail to weigh the actual text, history, and purpose of § 233 and FSHCAA. These cases effectively read the phrase "medical, surgical, dental, or related functions" to mean any activity "related to" medical care. But the statute speaks to "related *functions*"—and gives the example of "the conduct of clinical studies or investigation," *i.e.*, the roles, duties, and work of the PHS that are similar in nature to its medical, surgical, and dental functions that derive from direct medical care. *See Black's Law Dictionary* (11th ed. 2019) (defining "function"). Data breaches, by contrast, occur just as readily in countless other industries or professions outside of medicine, surgery, or dentistry; it is not a "related function" under § 233(a). *Marshall*, 2023 WL 2931823, at *5 ("None of these technology-related activities were "interwoven" with the provision of medical care. They instead consisted of security-related work by information technology and compliance personnel in a health care setting."); *cf. Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, 474 F. Supp. 3d 1004, 1008 (W.D. Mo. 2020) (holding that "[t]he allegation that [an attorney] maintained (or failed to maintain) the data itself does not necessarily transform the claim into one for legal malpractice").

---

entities receiving Federal funds . . . would receive coverage under the FTCA against medical malpractice claims."). *See also id.* at 4, 6, and 9. *See* H.R. Rep. 104-398, at 4 (1995).

[14] *See also* H.R. Rep. 102-823, at 7 (1992) ("[C]overed entities must have implemented appropriate policies and procedures to reduce the risk of medical malpractice and the risk of …malpractice suits.").

## IV.   LIFELONG CANNOT REMOVE TO FEDERAL COURT UNDER FEDERAL QUESTION JURISDICTION

LifeLong cannot remove under section 1331 because this case presents no federal question. Plaintiff alleges state law causes of action resulting from a data breach.  Under the well-pleaded complaint rule, federal question jurisdiction depends solely upon the Plaintiff's claims for relief and not on anticipated defenses to those claims.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even where both litigating parties may agree that there is a federal question present.  *Id*. at 93; *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality for Mont*., 213 F.3d 1108, 1113 (9th Cir. 2000).

LifeLong has not shown how a data breach resulting in alleged violations of state law causes of action triggers a federal question.  Nothing in Plaintiff's Complaint presents a question of federal law, nor has LifeLong pointed to any alleged federal claim.  Rather, LifeLong alleges that Plaintiff's theory of the case requires an interpretation of federal statute 42 U.S.C. § 233.  Notice of Removal at ¶ 33. However, the federal statute relates to LifeLong's defense, not Plaintiff's claims, which, as noted above are purely based on state laws.  Therefore, LifeLong cannot remove under section 1331.

## V.   CONCLUSION

For the foregoing reasons, this case must be remanded to state court.


DATED: February 22, 2024                 Respectfully submitted,


                                         ISMAIL J. RAMSEY
                                         United States Attorney

                                         */s/ Benjamin Wolinsky*
                                         BENJAMIN J. WOLINSKY
                                         Assistant United States Attorney

                                         Attorneys for the United States